UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERA TAYLOR o/b/o S.W.                                CIVIL ACTION

VERSUS                                                 NUMBER: 15-3705

CAROLYN W. COLVIN, ACTING                              SECTION: "I"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment (rec. docs. 12, 13) following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Supplemental Security Income ("SSI") benefits.

On April 12, 2012, Tera Taylor, mother of the Plaintiff-in-interest herein, S.W., protectively filed an application for SSI benefits on behalf of the minor child, alleging disability as of March 17, 2011. (Tr. pp. 123-128, 129). In a "Disability Report-Child" form that appears in the administrative record below, Plaintiff's disabling conditions were identified as a "[l]earning disability and speech problem." (Tr. p. 133). Plaintiff's application for SSI benefits was denied at the initial level of the Commissioner's administrative review process on July 11, 2012. (Tr. pp. 89-92). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on August 6, 2013 at which Plaintiff and Ms. Taylor appeared and testified. (Tr. pp. 93-95, 42-61).[1] On October 25, 2013, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled

---

[1] Ms. Taylor and Plaintiff voluntarily participated in the administrative hearing without the benefit of counsel or other representation. (Tr. pp. 44-46, 122).

within the meaning of the Social Security Act.  (Tr. pp. 20-41).  The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on November 7, 2014, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. pp. 2-6).  It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In her cross-motion for summary judgment, Plaintiff argues that the decision of the ALJ is not supported by substantial evidence.  (Rec. doc. 12-3, p. 3).  Relevant to the resolution of that issue are the following findings that were made by the ALJ:

1. The claimant was born on August 22, 2005.  Therefore, he was a preschooler on April 16, 2012, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since April 16, 2012, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments:  ADHD, learning disorder and speech/language delays (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since April 16, 2012, the date the application was filed (20 CFR 416.924(a)).

(Tr. pp. 26, 36).

Judicial review of the Commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries:  (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal

2

standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 590, 592 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant, whether a child or an adult, bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Fraga*, 810 F.2d at 1301; 20 C.F.R. §416.912(a). In making a disability determination on a child, the Commissioner uses the three-step sequential analysis set forth in 20 C.F.R. §416.924, as follows:

1. Determine whether the child engaged in substantial gainful activity during the relevant time frame and, if not;

2. Determine whether the child has a medically determinable severe impairment and, if so;

> 3. Determine whether the impairment meets, medically equals, or is functionally equal to an impairment set forth in the Listing of Impairments, Appendix 1, Subpart P, Part 404.
>
> *See Verrett v. Commissioner of Social Security*, No. 99-CV-3647 2001 WL 179922 at *1 n. 7 (E.D. La. Feb. 20, 2001)

In determining whether a child's impairment is functionally equivalent to one of those set forth in the Listing of Impairments, the Commissioner considers the child's limitations in the following six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. §416.926a(b)(1). To be functionally equal to a listing and thus of listing-level severity, the child must have "marked" limitations in two of the six domains or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(a). In evaluating a child's ability to function in each domain, the Commissioner is to consider: 1) the activities the child is able to perform; 2) the activities the child is not able to perform; 3) which of the child's activities are limited or restricted compared to children of the same age who do not have impairments; 4) whether the child has difficulty with activities at home, in childcare, at school, or in the community; 5) whether the child has difficulty independently initiating, sustaining, or completing activities; and 6) what kind of help the child needs to do activities, how much, and how often. 20 C.F.R. §416.926a(b)(2); *Maps ex rel. M.J. v. Astrue*, 09-CV-2226, 2010 WL 1946662 at *8 (N.D. Tex Apr. 30, 2010), *adopted*, 2010 WL 1948363 (N.D. Tex. May 13, 2010).

Plaintiff challenges the Commissioner's decision to deny him SSI benefits on one broad ground, namely, that the opinion of the ALJ is not supported by substantial evidence. (Rec. doc. 12-3, p. 3). Under the rubric of that broad challenge, Plaintiff argues that the ALJ's

conclusions that he was not markedly limited in the functional domains of acquiring and using information, attending and completing tasks, and interacting and relating with others lack sufficient evidentiary support. (*Id.* at p. 4).[2/] In support of that challenge, Plaintiff cites, in a somewhat inaccurate fashion,[3/] various pieces of evidence in the administrative record below without clearly delineating what evidence is supportive of limitations in each of the three functional domains that he identified. (*Id.* at pp. 4-6). Elsewhere, citing page 218 of the administrative record, Plaintiff erroneously represents that his respective scores of 73 and 75 in the Performance Comprehension and Calculation portions of the Woodcock Johnson – III ("WJ-III") test were more than two standard deviations below the mean. (*Id.* at p. 6).[4/] However, following that errant representation, Plaintiff points out that he "… scored two standard deviations below the mean for Clinical Evaluation of Language Fundamentals with a score of 70 in Core Language and [a] score of 71 in Expressive Language." (*Id.*). Defendant's cross-motion for summary judgment contains no discussion or mention of the latter test results.

---

[2/] At the conclusion of his supporting memorandum, Plaintiff alters his argument by asserting that he "… exhibits a marked <u>to extreme</u> impairment in [a]acquiring and [u]sing [i]nformation, [a]ttending and [c]ompleting [t]asks and [i]nteracting and [r]elating with [o]thers." (Rec. doc. 12-3, p. 6)(emphasis added).

[3/] For example, Plaintiff cites to "[d]oc. 10-2 at 27" as authority for the proposition that he "… attends Lafayette Academy Charter School, where he is in special education classes." (Rec. doc. 12-3, p. 4). Page 27 of record document 10-2, however, contains no such information. Rather, it appears that Plaintiff is referencing information that can be found on page five of the ALJ's decision which bears page number 27 of the administrative record and which was filed in the record of this proceeding as page number 28 of record document 10-2.

[4/] In the WJ-III, standard scores are based on an average or "mean" of 100 with a standard deviation of 15, meaning that each 15 points below 100 is one standard deviation below the mean; *e.g.*, a score of 85 is one standard deviation below the mean and a score of 70 is two standard deviations below the mean. *See, e.g.*, *Boyington v. Colvin*, 48 F.Supp. 2d 527, 531 (W. D. N. Y. 2014)(same scoring scale in Batelle Developmental Inventory II ("BDI-2")); Paige Pullen, Ph.D., <u>Scoring and Interpretation of Woodcock Johnson III</u> (2010)(found at http:faculty.virginia.edu/PullenLab/WJIIIDRBModule).

As noted earlier, functional equivalence is determined by assessing the degree of a child's limitations in six domains, with listing-level severity being established if the child has "marked" limitations in two of the six domains or if the child has an "extreme" limitation in one domain.  20 C.F.R. §416.926a(a).  In determining whether a child has a "marked" or "extreme" limitation, the Commissioner considers the functional limitations resulting from all of the child's impairments, "including their interactive and cumulative effects." 20 C.F.R. §416.926a(e)(1).  Among the medical evidence that the Commissioner may consider in making that determination are the results of ". . . formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents."  20 C.F.R. §416.926a(e)(1)(ii).  A marked limitation exists when an impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e)(2)(i).  A marked limitation is one that is more than moderate but less than extreme, the equivalent of functioning that would be expected to be found ". . . on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*  Of particular relevance to the matter at hand, the Regulations further provide that:

> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.  (*See* paragraph (e)(4) of this section.)

> 20 C.F.R. §426.926a(e)(2)(iii).

Also informative to the matter at hand is language that appears within Social Security Ruling ("SSR") 09-4p, the SSR pertaining to functional equivalence in the domain of attending

6

and completing tasks, which instructs that "[c]hildren with attention-deficit/hyperactivity disorder (AD/HD) whose primary difficulty is inattention may be easily distracted or have difficulty focusing on what is important and staying on task." *Id*. In addition, "[c]hildren with AD/HD whose primary difficulty is hyperactivity and impulsivity may fidget with objects instead of paying attention, talk instead of listening to instructions, or get up from their desks and wander around the classroom beyond what is expected of children their age who do not have impairments." *Id.* at *3 (footnote omitted). Additional language in SSR 09-4p discusses the effect that deficits in the domain of attending and completing tasks may have on limitations in other domains:

> . . . school-age children with AD/HD may have limitations in multiple domains. The effects of inattention and hyperactivity can impede the learning process and affect competence in many areas of life. These effects can result in limitations in the domain of "Acquiring and using information;" for example, by undermining academic performance.
>
> SSR 09-4p, 2009 WL 396033 at *3-4.

This interplay is echoed in SSR 09-3p, the SSR pertaining to functional equivalence in the domain of acquiring and using information, which provides as follows:

> [c]hildren who have limitations in the domain of "acquiring and using information" may also have limitations in other domains. For example, mental impairments that affect a child's ability to learn may also affect a child's ability to attend or to complete tasks. In such cases, we evaluate limitations in both domains of "Acquiring and using information" and "Attending and completing tasks."

As one court has observed, "[g]iven the important role of oral communication in the domains of acquiring and using information and interacting and relating with others, a child with a significant speech impairment may have functional imitations in both domains." *Perez v. Astrue*, No. 08-CV-2176, 2009 WL 3076259 at *6 (D. Colo. Sept. 23, 2009). Finally, as both SSR 09-4p and SSR 09-3p make clear:

7

> [r]ating the limitations caused by a child's impairment(s) in each and every domain that is affected is not 'double-weighing' of either the impairment(s) or its effects. Rather, it recognizes the particular effects of the child's impairment(s) in all domains involved in the child's limited activities.
>
> SSR 09-4p, 2009 WL 396033 at *4; SSR 09-3p, 2009 WL 396025 at *4 (footnotes omitted).

In the present case, the ALJ found that Plaintiff suffered from severe impairments in the form of ADHD, a learning disorder, and speech/language delays. (Tr. p. 26). At step three of the §416.924 analysis, the ALJ then concluded that the foregoing impairments did not satisfy the criteria of any of those set forth in the Listing of Impairments, particularly Listing 112.11 relative to ADHD. (*Id.*). Proceeding to the functional equivalence component of step three, the ALJ found that Plaintiff had a less than marked impairment in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others and had no limitations in the other three domains enumerated in §416.926a(b)(1). (Tr. pp. 28-36). However, in discussing the evidence that she considered in making that functional equivalence determination, nowhere did the ALJ mention the results of the Clinical Evaluation of Language Fundamentals, Fourth Edition ("CELF-4")[5]/ test that was administered on January 27, 2012 as part of a comprehensive Individualized Education Program ("IEP") assessment that was initiated by Plaintiff's school. (Tr. pp. 209-243). In the CELF-4, Plaintiff attained a Core Language Standard Score of 70 and an Expressive Language Standard Score of 71, scores that were characterized as indicative of "… severely delayed receptive and expressive language skills" and evidence of a "significant

---

[5]/ The CELF-4 is properly considered a "comprehensive standardized test designed to measure ability or functioning" under §416.926a(e)(2)(iii). *F.M. o/b/o B.M. v. Astrue*, No. 08-CV-4430, 2009 WL 2242134 at *8 (E.D. N.Y. July 27, 2009).

difference" in Plaintiff's "... ability to understand language and his ability to express himself with language." (Tr. p. 222). Those test scores were not mentioned anywhere in the Disability Determination Explanations of the state agency medical consultants who reviewed Plaintiff's file at the initial level of the Commissioner's administrative review process or in the ALJ's written decision. (Tr. pp. 62-74, 76-88). In Ms. Taylor's subsequent *pro se* request for review of the ALJ's decision by the AC, she made an impassioned plea that the latter tribunal consider the IEP results as the best evidence of Plaintiff's functionality. (Tr. pp. 14-19). Unfortunately, the AC also made no mention of the IEP or the CELF-4 test results in denying Plaintiff's request for review of the ALJ's decision. (Tr. pp. 2-6). Nor were the test scores addressed in any way by the Commissioner in her cross-motion for summary judgment.

The CELF-4 is properly considered to be a "comprehensive standardized test designed to measure ability or functioning" within the meaning of §416.926a(e)(2)(iii). *Noel o/b/o J.A.W. v. Colvin*, No. 12-CV-2064, 2013 WL 6797697 at *3 (C.D. Calif. Dec. 20, 2013); *F.M. o/b/o B.M. v. Astrue*, No. 08-CV-4430, 2009 WL 2242134 at *8 (E.D. N.Y. July 27, 2009). Plaintiff's score of 70 in the core language portion of that test is two standard deviations below the mean and his score of 71 in the expressive language portion of the CELF-4 is but a mere one point shy of that mark. Those scores, which qualified Plaintiff for speech/language pathology services, are evidence of severely delayed receptive and expressive language skills and underscore Plaintiff's difficulties in his ability to understand and to express himself with language. As directed by §416.926a(e)(2)(iii), if Plaintiff's day-to-day functioning was found to be consistent with his CELF-4 score of 70, the Regulations would direct a finding that he had a marked limitation in at least one of the six functional domains specified in

§416.926a(b)(1).  *F.M. o/b/o B.M.*, 2009 WL 2242134 at *8.  And, as noted earlier, as impairments in expressive language ability are germane to both acquiring and using information and interacting and relating with others, it is at least conceivable that Plaintiff's CELF-4 test scores, if consistent with his daily functioning, could result in a finding that he had a marked impairment in two of the six functional domains identified in §416.926a(b)(1).  *Perez*, 2009 WL 3076259 at *6 (and authorities cited therein).[6]

Like the ALJ in *M.A.M. v. Barnhart*, No. 05-CV-6295, 2006 WL 2034743 at *2 (E.D. Penn. July 18, 2006), although the ALJ in the present case recited the §416.926a(e)(2)(iii) standards in her written opinion (tr. p. 25), her decision does not include any statements regarding the statistical relevancy of Plaintiff's performance on the CELF-4 and whether that performance is consistent with Plaintiff's functioning in the relevant domain(s).  Indeed, Plaintiff's CELF-4 scores were not mentioned at all by the state agency medical consultants, the ALJ, the AC, or by the Commissioner in her cross-motion for summary judgment.  These omissions prevent the Court from determining whether the Commissioner's decision is supported by substantial evidence.  It should be up to the ALJ in the first instance to properly consider Plaintiff's CELF-4 scores in her functional equivalence analysis and to determine whether Plaintiff's daily functioning in the relevant domain(s) is consistent with those scores.  *Id.*

---

[6] The Court notes that on March 19, 2012, Dr. Patrick Dowling assessed Plaintiff with a GAF score of 40 which denotes "[s]ome impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood …" *Castillo v. Colvin*, No. 12-CV-3512, 2014 WL 897798 at *5 n. 2 (S.D. Tex. March 5, 2014).

**RECOMMENDATION**

For the foregoing reasons, it is recommended this this matter be remanded to the Commissioner for further proceedings consistent with the Court's opinion.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[7]

New Orleans, Louisiana, this  3rd  day of _____ June _____, 2016.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[7] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

11